UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ELIZABETH M. PEAKE,

        Plaintiff,

                                                      MEMORANDUM & ORDER
  v.                                          03-CV-5829 (NGG) (SMG)

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
-----------------------------------------------------------X
GARAUFIS, United States District Judge.

      Elizabeth M. Peake ("Plaintiff") brings this action pursuant to sections 405(g) and 1383(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). The Plaintiff challenges Commissioner of Social Security Jo Anne B. Barnhart's ("Commissioner") final determination denying her application for Social Security disability benefits. Specifically, the Plaintiff contends that the ALJ failed to properly evaluate both the medical evidence and the Plaintiff's credibility. Now before the court are the parties' cross-motions for judgment on the pleadings. For the reasons set forth below, the defendant's motion is DENIED and the plaintiff's motion is GRANTED to the extent that the case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**I.    Background**

      *A.    Procedural History*

      The Plaintiff filed an application for Social Security disability benefits on February 22, 2000, alleging that knee injuries prevented her from working after January 1, 1997. (Transcript of the Record ("Tr.") at 87, 93.) The Social Security Administration denied the application initially on May 9, 2000 (id. at 68, 70-73) and again upon reconsideration on June 15, 2000. (Id.

1

at 69, 75-77.) After a hearing on October 31, 2001 (id. at 29-67), Administrative Law Judge ("the ALJ") Sol Wieselthier determined that the Plaintiff was not eligible for disability benefits. (Id. at 14-23.) This decision became final on October 24, 2003, when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (Id. at 4-7.) This action to challenge the Commissioner's final decision was timely filed in accordance with 42 U.S.C. § 405(g).

    B.    *The Plaintiff's Personal and Employment History*

The Plaintiff was born in Ireland on April 30, 1944 and came to the United States in January 1961. (Id. at 34.) Ms. Peake testified that she finished school in Ireland at age fourteen and attained the equivalent of a high school education. (Id. at 40-41.) She was fifty-seven years old at the time of the hearing before the ALJ. (Id. at 34.)

The Plaintiff worked for about four hours a day as a luncheon waitress at a private club from January 1980 until January 1992, then performed similar work at a restaurant from January 1993 until January 1997. (Id. at 41-43, 94.) She stated that these jobs required her to lift less than ten pounds frequently, and up to twenty pounds occasionally. (Id. at 43, 94.)

    C.    *The Plaintiff's Medical History*

In early 1991, the Plaintiff injured her pelvis and right knee in a car accident. At that time she consulted Dr. Elias Sedlin, an orthopedist, for the first time. (Id. at 49, 118.) On July 8, 1994, she saw Dr. Sedlin again for an operation and arthroscopy on her right knee. (Id. at 50, 115, 118.) Dr. Sedlin stated that at the time of the surgery, he noticed the Plaintiff had "developed a pattern of buckling with some locking and swelling." (Id. at 118.) Dr. Sedlin also noted that he saw the patient intermittently after the surgery. (Id.) In a later note, Dr. Sedlin

explained that as of January 2000, he had not seen the Plaintiff "in at least five years." (Id. at 115.)

The claimed date of the onset of disability is January 1, 1997, when the Plaintiff indicates that she slipped and fell in her home and injured herself. (Id. at 42, 87, 118.)

Three years later, on January 27, 2000, Dr. Sedlin saw the Plaintiff again (apparently for the first time in at least five years) and recorded in an office note that the Plaintiff was experiencing pain and occasional giving way of the knee. (Id. at 115.) Dr. Sedlin ordered an x-ray and recommended an MRI, but the patient was unable to afford the MRI. (Id. at 115.) Dr. Sedlin also assessed the condition of the Plaintiff's left knee: "[t]he joint is stable." (Id.)

On April 24, 2000, the Plaintiff visited Dr. Mohammed Khattak for an independent evaluation relating to her disability claim. Dr. Khattak noted "no swelling, effusion, or instability" of the knee joints. (Id. at 113.) Dr. Khattak also ordered an x-ray, which showed a "[n]egative radiographic examination of the left knee." (Id. at 114.) Three days later, Dr. Sedlin filled out a series of disability questionnaires. (Id. at 126-40.)

On July 13, 2000, Dr. Sedlin issued a second opinion letter (id. at 118) very similar in form and content to his first letter of January 27, 2000. (Id. at 115.) In this second letter, Dr. Sedlin restated the Plaintiff's medical history in essentially the same language as in the first letter. (Id. at 118-19.) But instead of noting that the Plaintiff's knee was stable as he did in the first letter, Dr. Sedlin opined in the second letter that "[t]he joint is slightly unstable." (Id.) He also added commentary in this second letter expressing the view that the Plaintiff is effectively disabled, given her age and educational status. (Id.) Specifically, Dr. Sedlin indicated that the Plaintiff "has arthritic changes in both knees and cannot do a full time standup job for which she had done most of her life due to a combination of this medical condition and her education and

3

training." (Id. at 119.)  Dr. Sedlin also stated in the July 13, 2000 letter that he had not seen the Plaintiff since their January 27, 2000 meeting.  (Id. at 118.)

On March 27, 2001, Dr. Sedlin wrote a third letter containing largely the same language as the first and second letters.  Dr. Sedlin noted in this third letter (as he did in his first letter) that "[t]he joint was stable[,]" and reiterated his opinion of disability (first stated in his second letter).  (Id. at 124-25.)  At the time he wrote his third letter, Dr. Sedlin had still not met with the Plaintiff since their January 27, 2000 visit.  (Id. at 124.)

On October 23, 2001, Dr. Sedlin wrote a fourth opinion letter, again containing largely the same information regarding the Plaintiff's condition as the prior three letters.  During the ALJ hearing, the Plaintiff stated that she met with Dr. Sedlin on October 25, 2001, but Dr. Sedlin's fourth letter does not make reference to that visit.  (Id. at 52.)

While the Plaintiff characterizes Dr. Sedlin as her treating physician, the record reveals that she met with Dr. Sedlin only a few times, sporadically scattered over a ten-year period.  The record only provides support for the conclusion that over ten years, Dr. Sedlin saw the Plaintiff in 1991, 1994, then next in 2000, and possibly again in 2001.

The record also reflects that three years that passed between the time of the alleged onset of the Plaintiff's disability (January 1997) and her first visit with Dr. Sedlin.  (Tr. at 115.)

Also during the hearing, the Plaintiff mentioned an ongoing treatment relationship with a Dr. Valanzanti, but indicated this relationship was limited to treatment for occasional pancreatitis.  (Id. at 52-54.)

## II. Discussion

*A. Standard of Review*

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. 42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). A reviewing court should verify that a claimant had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (quoting Gold v. Sec'y of Health, Educ. and Welfare, 463 F.2d 38, 43 (2d Cir. 1972)).

A full hearing includes a well-developed medical record. Because of the non-adversarial nature of a benefits hearing, where the record is incomplete, an ALJ has an affirmative duty "to develop a claimant's medical history even when the claimant is represented by counsel . . . ." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). Further, in evaluating medical evidence, an ALJ must give good reasons for the weight the ALJ assigns to the opinions of a claimant's treating source. 20 C.F.R. § 404.1527(d)(2); see Rosa, 168 F.3d at 79 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

*B. The ALJ's Decision*

To receive benefits, a claimant must be "disabled" within the meaning of the Social Security Act. Shaw, 221 F.3d at 131. Agency rules require the Commissioner to apply a five-step sequential analysis to evaluate whether claimant is disabled. See 20 C.F.R. § 404.1520.

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.  If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.  If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.  If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.  If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw, 221 F.3d at 132 (citing DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998)).

The ALJ acknowledged this five-step analytical framework in his decision. (Tr. at 18.) He found that the Plaintiff met the disability requirements of the first two steps because she was not engaged in gainful activity (id. at 18, 22) and because she had a severe impairment within the meaning of 20 C.F.R. § 404.1520(b). (Tr. at 19, 23.) In the third step, the ALJ found that while the Plaintiff's impairments were "'severe' within the meaning of the Regulations[,]" they were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1 . . ." (Id. at 19.)

The ALJ found that the Plaintiff's disability claim failed at the fourth step because, despite her severe impairment, she retained sufficient residual functional capacity to return to her past work. (Id. at 23.) The ALJ determined that the Plaintiff's residual functional capacity allowed her to "occasionally lift and/or carry 50 pounds, sit 6 hours in an 8-hour day, stand and/or walk 6 hours in an 8-hour day, bend, reach, and push and/or pull." (Id.) This assessment

6

was "[b]ased on the medical findings, the assessment of the impartial consultant, and the claimant's activities." (Id. at 22.) In accordance with the five-step analysis, the ALJ found that because the Plaintiff retained sufficient capacity to continue her old work, she was not disabled within the meaning of the Social Security Act and thus not entitled to benefits. (Id. at 23).

In reaching this conclusion, the ALJ discounted the assessment provided by Dr. Sedlin, who indicated that the Plaintiff "is disabled for any employ[ment] that requires prolonged standing" (Tr. at 125) and that she "is not able to stand for any prolonged period of time." (Tr. at 142). The ALJ wrote:

> Dr. Sedlin's assessment of the claimant's ability to perform work related activities and his opinion that the claimant is disabled were considered but are contradicted by medical findings, and the assessment of the impartial consultant, which is consistent with other evidence, including medical findings, and the infrequent treatment, the lack of prescribed medication and the claimant's activities. Consequently, Dr. Sedlin's assessment and opinion are contradicted, outweighed and are not accepted.

(Tr. at 21-22.) The ALJ's determination was also based in part on his conclusion that the Plaintiff's "allegations regarding her limitations are not totally credible." (Tr. at 22.)

    C.    *The Plaintiff's Claims*

        *1.*    *The Treating Physician Rule*

The Plaintiff argues that the ALJ did not accord Dr. Sedlin's evaluations and opinion the proper weight that they were entitled as those of her "treating physician." Specifically, the Plaintiff contends that the ALJ improperly chose to credit the report of Dr. Khattak, who had only seen the Plaintiff once and possessed "limited qualifications," over Dr. Sedlin, "a board certified treating orthopedist who had seen her for seven years," and was, therefore, her treating physician. (Pl. Memo. at 11.) The government counters that because there was no evidence of a

7

treating relationship between Dr. Sedlin and the Plaintiff, his opinions were properly treated by the ALJ as a standard medical source, which he reasonably chose to discount.

"The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir.1999); 20 C.F.R. § 404.1527(d)(2). An ALJ is required to provide "good reasons" to accord the opinion other than controlling weight. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(d)(2). Specifically, an ALJ must apply the factors set out in 20 C.F.R. § 404.1527(d)(2)-(6), including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Halloran, 362 F.3d at 32. A court will not "hesitate to remand when the Commissioner . . . do[es] not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33. Further, before rejecting a treating physician's diagnosis, an ALJ must first "attempt[] to fill any clear gaps in the administrative record." Rosa, 168 F.3d at 79. Thus, the ALJ has an affirmative duty to develop the administrative record. Id.; Perez, 77 F.3d at 47.

Here, the ALJ failed to apply the treating physician rule with adequate clarity and thoroughness. Although the ALJ acknowledged that that Dr. Sedlin was "indicated to be the claimant's treating source," the ALJ did not then specifically consider whether Dr. Sedlin should in fact qualify as a treating physician. Such a determination was necessary. While it is clear from the decision that the ALJ did not assign controlling weight to Dr. Sedlin's evaluations, his reasons for doing so are not stated with sufficient particularity to allow a meaningful review.

Principally, the ALJ failed to adequately address the issue of the length, frequency and nature of Dr. Sedlin's treatment of the Plaintiff. See 20 C.F.R. § 404.1527(d)(2)(i). While the ALJ did pay some attention to this issue, including noting that the Plaintiff was treated "infrequently" and that in one of his reports "Dr. Sedlin did not state the frequency of the claimant's treatment and did not state the last date on which she was seen" (Tr. at 21), the ALJ did not delve sufficiently into the nature of the treatment relationship to support his determination. In particular, the ALJ seemed to take no notice of the fact that Dr. Sedlin had treated the Plaintiff since 1991 and that he performed surgery on her right knee in 1994. (Tr. at 118.) While this treatment predated the Plaintiff's claimed date of disability onset, it may well have provided Dr. Sedlin with both a "unique perspective" and an important "longitudinal picture" for evaluating the Plaintiff's present condition. See 20 C.F.R. § 404.1527(d)(2). At the very least, these issues should have been considered before the ALJ chose to credit Dr. Khattak's evaluation based on only one examination of the Plaintiff. Further, to the extent that there is ambiguity in the record concerning the frequency of Dr. Sedlin's treatment of the Plaintiff, the lack of doctor visits between successive opinion letters containing somewhat different medical evaluations, and the specific differences between these letters, the ALJ did not meet his obligation to affirmatively develop the record. The ALJ may have considered these factors in reaching his conclusion, but the record does not reflect this fact.

Similarly, the ALJ's explanation of his consideration of the evidence in support of Dr. Sedlin's opinion was lacking. See 20 C.F.R. § 404.1527(d)(2)(ii). The ALJ indicated that Dr. Sedlin's assessment and opinion "were considered but are contradicted by medical findings, and the assessment of the impartial consultant, which is consistent with other evidence, including medical findings, the lack of prescribed medication and the claimant's activities." (Tr. at 21-22.)

9

Dr. Khattak, however, reached the same diagnosis as Dr. Sedlin, finding that the Plaintiff has degenerative arthritis. (Tr. at 113.) While Dr. Khattak's assessment of the Plaintiff's physical capabilities differed from Dr. Sedlin's, where two doctors are in general agreement concerning the nature of a patient's condition, it is insufficient to indicate that one doctor's findings contradict those of the other without specifically elaborating the nature of the contradictions. As this court has previously held, an ALJ who asserts, without further explanation, that a physician's opinion is contradicted has not given good reasons for the weight assigned to that physician's opinion, and thus "cannot be said to have fulfilled his duty." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 290-91 (E.D.N.Y. 2004).

In deciding to reject Dr. Sedlin's evaluation, the ALJ also made no mention of the impact that Dr. Sedlin's expertise and specialization played in the decision-making process. The ALJ, however, was required to consider this factor under the regulations. See 20 C.F.R. § 416.927(d)(2)(iv).

Although the ALJ clearly arrived at a decision not to accept Dr. Sedlin's evaluations and opinions, from the record it is simply unclear whether this determination involved the application of all of the considerations required by the regulations. If an ALJ's decision leaves reasonable doubt as to whether legal standards were correctly applied, an unacceptable risk exists that a claimant may be improperly deprived of a right to a correct determination. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). The appropriate remedy in such a situation is to remand the matter to the ALJ for further development and explanation of his findings. See id. at 987. It is not the place of a district court to attempt to read between the lines of the administrative record to infer the ALJ's reasoning from subtleties; rather, the ALJ should illuminate the reasoning underlying his or her decision. See Schaal, 134 F.3d 496 at 500.

On remand, the ALJ should leave no doubt as to his findings. The ALJ should explain whether or not Dr. Sedlin is the Plaintiff's treating physician and state the facts that lead to this conclusion. If the ALJ finds that Dr. Sedlin is the Plaintiff's treating physician, but decides not to assign controlling weight to Dr. Sedlin's opinion, the ALJ should clearly state good reasons for this finding in accordance with 20 C.F.R. § 404.1527(d)(2). If any relevant facts are unknown, the ALJ should investigate these facts and present them in his decision in accordance with his obligation to develop the record. 20 C.F.R. § 1512(d), (e).

          2.     *The Plaintiff's Credibility*

The Plaintiff contends that the ALJ failed to properly evaluate her credibility because he once again failed to apply the proper standards in reaching his determination. The ALJ concluded in the Findings portion of the decision that the Plaintiff's "allegations regarding her limitations are not totally credible" for the reasons given in the body of the decision. (Tr. at 23.) Those reasons appear to be that the ALJ found that the Plaintiff's alleged limitations were "contradicted by the medical findings that disclose she has full range of motion of the knees and does not have swelling, effusion or instability." (Tr. at 21.)

"It is the function of the Commissioner, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (alteration in original) (quotation omitted). However, the ALJ must nonetheless make a determination of credibility under the standards set by the Social Security Administration and the law of this circuit. Section 416.929(c)(3) of title 20 of the C.F.R., as interpreted in Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. 1996), requires an ALJ to evaluate a plaintiff's report of her symptoms through a two-step analysis. First, "the adjudicator must consider whether there is an underlying

11

medically determinable physical or mental impairment[ ]--i.e., an impairment[ ] that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms." 1996 WL 374186 at *2; see also 20 C.F.R. § 416.929(b). Second, "once an underlying physical or mental impairment[ ] that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. Such an evaluation must include consideration of the credibility of the plaintiff's subjective reports of pain, which in turn requires that the ALJ "must consider" the following non-exclusive list of factors:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms

Id. at *2-3. In reaching a determination regarding a plaintiff's credibility, an ALJ is also obligated to consider relevant statements from treating and consulting physicians and any observations noted by SSA employees during interviews. Id. at *5.

Though the ALJ made passing reference to Social Security Ruling 96-7p in his decision, it is clear that he did not consider all of the relevant factors enumerated within it. The ALJ concluded that because the Plaintiff had a full range of motion and did not have swelling, effusion or instability that she would not, therefore, experience pain as she alleged. The ALJ, however, did not specifically address whether the Plaintiff's degenerative arthritis itself "could reasonably be expected to produce" such "pain or other symptoms," which is the analysis demanded under the regulations. See 1996 WL 374186 at *2. Instead, the ALJ focused only on the absence of certain physical symptoms that he apparently judged to be synonymous with pain. Having concluded that "[t]he medical evidence indicates that the claimant has ostheoarthritis of the knees and degenerative arthritis" (Tr. at 19), the ALJ was obliged to consider whether these impairments, not separate symptoms, could cause the pain the Plaintiff contends she experiences.

Moreover, the ALJ's flawed consideration of the Plaintiff's physical symptoms did not even take full account of the record. Although the ALJ later found that Dr. Sedlin's assessment of the Plaintiff's condition was contradicted, he did rely on his physical evaluation of the Plaintiff to support his conclusion that the Plaintiff did not experience the level of pain she claimed. Notably, though, the ALJ omitted Dr. Sedlin's findings that the Plaintiff "demonstrated bossing which are typical of the arthritic process" (Tr. at 141) and that she had "osteophytic protuberance around the tibial condyles bilaterally." (Tr. at 119.) Such physical findings might well support the Plaintiff's claims that she had trouble walking. Indeed, both doctors who evaluated the Plaintiff noted that she experiences a certain measure of difficulty in walking. Notably, in Dr. Khattak's case, this conclusion was made even without his finding that the Plaintiff exhibited any of the physical symptoms the ALJ focused on in his decisionmaking.

13

In the second step of the analysis, the ALJ's evaluation of the Plaintiff's subjective complaints of pain both overlooked significant facts in the record and failed to properly take into account relevant factors from the regulations.

After a full reading of the hearing transcript, the ALJ's adverse credibility determination is troubling because it appears to have been reached without regard to much of the Plaintiff's testimony concerning her daily activities. In finding that the Plaintiff's daily activities demonstrate that she is not disabled, the ALJ seems to have focused only on the type of activities that she testified she engaged in, rather than the manner in which she engages in them. See Sarchese v. Barnhart, No. 01 Civ. 2172, 2002 WL 1732802, at *8 (E.D.N.Y. July 19, 2002) (Gleeson, J.) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir.1983)) ("The Second Circuit has frequently rejected determinations that a person is not disabled based on minimal activities of daily life not engaged in 'for sustained periods comparable to those required to hold a sedentary job.'"). Given the Plaintiff's testimony concerning her daily routine, it is difficult to understand how the ALJ concluded that she "functions on a daily basis" and is thus not disabled. (Tr. at 21)

The activities on which the ALJ based his conclusion were that the Plaintiff "reads, watches television, does light chores, shops, visits, knits, attends church and goes for walks." (Id.) Clearly reading, watching television and knitting do not require the Plaintiff to either stand or walk, the two activities that she testified provide her with the most difficulty and pain. At first glance, the remaining activities appear to be of a more active type, and thus would tend to suggest that the Plaintiff is fairly able. A review of the record, however, reveals that in compiling this list, the ALJ made a number of striking omissions concerning the limitations the Plaintiff faces in actually carrying out these activities. For instance, the Plaintiff indicated that

14

when she does chores such as washing dishes she is able to stand for "[m]aybe 10 or 15 minutes. Then I sit down and relieve it. Then I sit down and rest for a while." (Id. at 44.) As for the Plaintiff's walks, she testified that she visits the coffee shop located about three blocks from her house every other day and that it takes her "[a]bout maybe 10, 15 minutes" to walk there because she "take[s] it very slowly." (Id. at 45-46.) Similarly, the Plaintiff testified that her shopping consists of going to the market "just across the street" "[m]aybe once or twice a week" and only being able to "carry the like, light objects. That would be about five pounds." (Id. at 47.) The Plaintiff also testified that when she goes to church her husband usually drives her. (Id. at 56.) More generally, the Plaintiff testified that her typical day consists of watching television from about ten in the morning until ten at night consisting of two hour periods when she lies on the couch with her left knee elevated. (Tr. at 55.) Thus, when the full record is considered a much different picture of the Plaintiff's physical capabilities emerges.

In applying the relevant factors concerning the Plaintiff's subjective complaints of pain, the ALJ also failed to consider the measures the Plaintiff takes to relieve her pain along with factors that precipitate and aggravate the Plaintiff's condition. Although the Plaintiff testified in some detail concerning these issues, they do not appear to have been considered by the ALJ in his evaluation of the Plaintiff's credibility.

On remand the ALJ should apply Social Security Ruling 96-7p meaningfully. First, the ALJ should address whether the Plaintiff's medical impairment reasonably might be expected to give rise to the type of pain of which she complains. Second, the ALJ should make a full examination of the Plaintiff's explanations regarding her ability to carry out daily activities and should also address other relevant factors provided in the regulations concerning the Plaintiff's credibility.

**II.     Conclusion**

For the foregoing reasons, the Commissioner's motion is DENIED and the Plaintiff's motion is GRANTED to the extent that this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.


SO ORDERED.


Dated:  June 27, 2005                                              /s/ Nicholas Garaufis
        Brooklyn, NY                                               NICHOLAS G. GARAUFIS
                                                                   United States District Judge